## Commonwealth v. Brenner

*Robert J. Wire, Jr.* , Assistant District Attorney, and *Harold N. Fitzkee, Jr.*, District Attorney, for Commonwealth.

*Allen H. Smith,* for defendant.

SHADLE, J., December 27, 1971.—In a trial before the court without a jury, defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. He filed motions for a new trial and in arrest of judgment, alleging that evidence as to the taking of a sample of his blood and analysis thereof for alcoholic content was improperly admitted because he was unable to understand advice as to his constitutional rights or to intelligently waive those rights with regard thereto. Obviously, should defendant's contention be correct, it would be relevant only as to the grant of a new trial, not as to arrest of judgment. Argument was had before the court en banc, and this opinion and order are filed on its behalf.

The sequence of events was as follows:

Defendant's car and another vehicle were involved in an accident, which the police officers thereafter investigated. While the officers did not see defendant drive, they were informed that he was one of the operators. After speaking to and observing defendant at the scene, the officers noted ample evidence in his conduct and behavior to conclude that he was under the influence of intoxicants.

In describing defendant's condition, one of the officers testified, inter alia, as follows: ". . . he had a great deal of trouble understanding questions or instructions. . . . I couldn't make him understand what I wanted him to do or how I wanted him to do it. . . . I asked him . . . approximately . . . 25 questions. I left blank what he couldn't understand and what he didn't answer; and I'd say there's about ten of them blank."

The officer testified further: "I asked him twice (whether he would submit to a blood alcohol test), and the other officer asked him once. . . . (His reply was) At all times, affirmative. . . . He did sign a consent (at the hospital for the extraction of a blood specimen to be tested). . . . I gave him his rights; I explained to him what they were. This, I really couldn't tell, whether he understood them . . . it was explained to him (about the consent form that he signed in the hospital for the blood test); and when he was asked whether he understood it, he said, " 'Yes.' Other than this, I really can't say."

Defendant did not testify on his own behalf at trial. He contends that *on this record alone it is self-evident* that he was unable to understand his constitutional right to withhold consent to a blood test, or to intelligently waive this right. Such lack of capacity,

obviously, must have been on the sole ground of intoxication.

Defendant was not actually arrested prior to the test, nor could he have been arrested on sight without a warrant, because the officers did not observe the essential ingredient of operation of the motor vehicle by defendant to make out the misdemeanor of operating while under the influence of intoxicating liquor.

We are, therefore, faced with the question of whether a defendant who is suspected of, but not arrested for, this offense may invalidate ostensible consent to the performance of a blood alcohol test on the ground that he was too intoxicated to understand his rights and to intelligently waive such rights.

Our court held in Commonwealth v. Klinedinst, 82 York 198 (1969), and Commonwealth v. Holland, 83 York 17 (1969), that the doctrine of implied consent to a chemical test for intoxication under the Act of July 28, 1961, P. L. 918, sec. 1, as amended, 75 PS §624.1, may be invoked only where defendant has been arrested and charged with the offense, but that actual consent to such a test obviates these requirements, provided the consent is voluntarily and intelligently given.

As previously noted, defendant here contends that the record establishes that, apparently because of his intoxication, he was unable to comprehend his right to refuse a test, or to effectively waive that right. We are unable to agree for three reasons.

First, the record is by no means so unequivocal. Although defendant may have had some trouble understanding the instructions and questions of the officers in conducting a so-called "field sobriety test" at the scene, his rights regarding performance of the blood

test and extraction of the blood sample were explained to him, he indicated that he did understand those rights, and he specifically consented to the extraction of blood and the test. Absent any testimonial declaration by defendant that he did not, in fact, understand the words and actions and their significance, we are unwilling to draw that conclusion on this record.

Secondly, not only did defendant fail to take any action to have the fact of the blood alcohol test and its result suppressed as evidence, he made no objection whatever to the admission of such evidence at trial. We, therefore, hold that any objection to its admissibility was thereby waived.

Finally, the social results of defendant's arguments, if carried to its ultimate, would be intolerable. To accept its theory would be to hold that a defendant may escape a legislatively-prescribed and scientifically valuable method of determining intoxication by voluntarily becoming so inebriated as to be incapable of understanding a request for a chemical test and of agreeing or objecting thereto. Thus, one partially or mildly intoxicated could be tested if he agreed, but a grossly intoxicated driver could, by his self-induced incapacity, preclude verification and proof of his condition. Such a result is neither in accord with the legislative policy regarding testing for and proof of intoxication, nor is it required by any constitutional mandate.

## ORDER

And now, December 27, 1971, defendant's motions for a new trial and in arrest of judgment are overruled and refused, and an exception is noted on his behalf.

Defendant is directed to appear for sentence on January 7, 1972, at 10 a.m. in Courtroom No. 1.